UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SWJ Management, LLC,

    Appellant,

v.

Richard M. Coan, Trustee,

    Appellee.

No. 3:14-cv-01860 (MPS)

**Opinion and Order**

SWJ Management, LLC ("Management"), a debtor in bankruptcy, appeals from an order of the bankruptcy court (Hon. Alan H.W. Shiff) granting a creditor's motion to convert the case from chapter 11 to chapter 7 and denying the debtor's motion to dismiss. Because Management has failed to demonstrate that the bankruptcy court abused its discretion in issuing the order, I AFFIRM.

**I.    Background**

On March 3, 2014, SWJ Management, LLC ("Management") filed a petition under chapter 11 of the Bankruptcy Code in the District of Delaware, which transferred the case to the District of Connecticut on April 4, 2014. Bankr. Docs. 1 & 2. This was not Management's first bankruptcy filing. It had filed in June 2013 in the District of New Jersey, but the bankruptcy court in that District dismissed the case on January 15, 2014, for bad faith filing. Bankr. Dkt. No. 13-29621(NLW) (Bankr. N.J.), Doc. 99.[1] At the time, Management claimed that it had assets consisting of claims in another bankruptcy case pending in this District and presided over

---

[1] This Court may take judicial notice of filings in other litigation. *See, e.g.*, *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish a fact of such litigation and related filings.").

1

by Judge Shiff, *In re First Connecticut Consulting Group, et al.*, Bankr. Dkt. No. 02-50852 (Bankr. Conn.) (the "First Connecticut Bankruptcy"). In a July 1, 2014 order ruling on a motion by Management filed in the First Connecticut Bankruptcy (the "July 1, 2014 Order"), Judge Shiff found that Management had no interest in the assets involved in that case. Bankr. Dkt. No. 02-50852 (Bankr. Conn.), Doc. 2446. Management appealed the July 1, 2014 Order to this Court, *In re First Connecticut Consulting Group*, Dkt. No. 14-cv-01202.

On August 29, 2014, the chapter 7 trustee in the First Connecticut Bankruptcy, acting as a creditor of Management's estate, filed a motion to convert Management's bankruptcy case to chapter 7. Bankr. Doc. 48. In its motion, the First Connecticut Trustee cited Management's failure to perform its duties under the Code, failure to submit operating reports, and failure to retain counsel properly. Management objected to the motion to convert. Bankr. Doc. 76. The bankruptcy court held its first hearing on the conversion motion on October 7, 2014.

Throughout the October 7 hearing, the parties continued to dispute whether Management had retained proper counsel. Management proposed to have attorney David Carlebach appear on its behalf, but the United States Trustee objected due to a claimed conflict of interest. The United States Trustee alleged that Carlebach had represented Management's principal, Richard Annunziata, in a different matter, which allegedly created a conflict in Carlebach's proposed representation of Management. October 7 Hearing Transcript, Bankr. Doc. 134, at 6 ("October 7 Transcript"). After discussing the potential conflict with the bankruptcy court, Mr. Carlebach informed the bankruptcy court that Annunziata, who was present during the hearing, had asked Carlebach to withdraw his petition for representation. October 7 Transcript, at 35 ("Mr. Annunziata is going – has indicated that he's going to ask me to resign, withdraw my application

and hire a different counsel.").[2] The bankruptcy court continued the conversion hearing until October 28, 2014, expressing concern that if the parties proceeded to argument regarding conversion, Management would have no counsel and would be "defenseless to challenge" conversion. *Id.* at 43.

In a colloquy with the bankruptcy court during the October 7 hearing, Carlebach also suggested to the court that Management would prefer the matter be dismissed rather than converted to chapter 7. *Id.* at 34. At the end of the hearing, Judge Shiff stated the following:

> At one point during this morning's hearing Mr. Carlebach – and I recognized that he doesn't represent the entity, nonetheless said that there was a potential for SWJ to file a motion to dismiss the Chapter 11 case.
>
> Pending now is a trustee's motion to convert the case. There is no motion to dismiss pending.[3] Perhaps the U.S. Trustee will file one, perhaps not.
>
> And as I mentioned, perhaps the entity, Management[, ]will get an attorney that is permitted to represent it and that entity may file a motion to dismiss. Right now there's nobody to act for that entity. . . .
>
> [I]f a motion to dismiss is filed by a person who has the right to file, I'll take that up on the 28th.
>
> Now it may be that I'll need evidence unless the record demonstrates a basis that as a matter of law there should be a dismissal, or I'm persuaded that the record is sufficient and, again, I emphasize if SWJ Management isn't represented, it will remain unrepresented at the hearing.

*Id.* at 43–44.

In the week prior to the October 28 hearing, Attorney Lamya Forghany, who had previously filed an appearance on behalf of Management, Bankr. Doc. 10, submitted monthly operating reports dating from March 2014 to October 2014. Bankr. Doc. 97–104. Forghany also

---

[2] The Court notes that Management listed Attorney Carlebach as its "Proposed Counsel" in briefs submitted in this appeal. Dist. Doc. 15, 18.
[3] It appears this statement was incorrect. On July 24, 2014, the United States Trustee filed a motion to dismiss Management's bankruptcy case due to, *inter alia*, Management's failure to submit required monthly operating reports. Bankr. Doc. 29. The bankruptcy case docket suggests no action was taken on this motion.

3

filed a motion to dismiss on behalf of Management on October 23, 2014.  Bankr. Doc. 95.  In that motion, Management argued that in light of the bankruptcy court's July 1, 2014 Order finding that Management had no interest in the assets involved in the First Connecticut Bankruptcy, Management no longer held any assets, and as a result, dismissal, rather than conversion, was appropriate.  *Id.* at ¶ 18, 19.

At the October 28 hearing, Forghany appeared on behalf of Management.  October 28 Hearing Transcript, Bankr. Doc. 125, at 2 ("October 28 Transcript").  The First Connecticut Bankruptcy Trustee also appeared, and argued that conversion, rather than dismissal, was appropriate, on the following grounds: (1) Management had made contradictory statements to different courts regarding its possession of assets, telling some it held no assets and telling others it had "considerable" assets, (2) this case was Management's second bankruptcy filing in two years, and dismissal would force the creditors to continue to "chase" Management around the country,[4] (3) Management had failed to retain non-conflicted counsel, (4) no burden would be placed on the estate if the court appointed a trustee, and (5) Management had been delinquent in filing operating reports and paying fees.  The United States trustee also argued in support of conversion, asserting that the monthly operating reports that were filed were submitted in improper form and that the United States had still not received Management's fees.

During Forghany's argument in support of dismissal, the bankruptcy court inquired about Management's allegedly inconsistent statements regarding its possession of assets.  The bankruptcy court asked Forghany what Management's position was on whether the estate held any assets.  Forghany responded that Management did hold assets, and that the only reason Management was making assertions that it did not have assets in other courts was that the

---

[4] The Trustee's counsel informed the bankruptcy court that the New Jersey bankruptcy court had dismissed Management's bankruptcy the year before because Mr. Annunziata was using Management as his "personal piggy bank."  October 28 Transcript, at 8–9, 12.

4

bankruptcy court had found in the July 1 Order that Management did not have an interest in the assets of the First Connecticut Bankruptcy estate.  October 28 Transcript, at 15–19.

The bankruptcy court granted the motion to convert and denied the motion to dismiss the following day.  Dist. Doc. 1-1.  In support of its decision to convert the matter to chapter 7, the bankruptcy court gave the following non-exhaustive list of reasons: (1) Management's contradictory statements regarding whether the estate had assets, (2) Management's failure to take any steps towards reorganization as a chapter 11 debtor, (3) the possibility that it made avoidable transfers, (4) its efforts to employ counsel with actual or potential conflicts of interest, and (5) its failure to file operating reports and other reports in the required format and in a timely fashion.  *Id.* at ¶ 10.  With regard to its denial of the motion to dismiss, the bankruptcy court found that, in light of the fact that Management had made contradictory statements to different courts about whether its estate had assets, "Management has articulated no cause for the dismissal of this case and that the dismissal of the above-referenced bankruptcy case is not in the best interest of creditors."  Id. at ¶ 9.   Management has appealed the bankruptcy court's order to convert the case to chapter 7 and to deny Management's motion to dismiss.

**II.     Standard of Review**

A bankruptcy court must find "cause" either to dismiss a chapter 11 case or convert it to chapter 7.  11 U.S.C. § 1112(b)(1).  Once the bankruptcy court determines there is cause to dismiss or convert, it must choose dismissal or conversion based on the "best interests of creditors and the estate."  *Id.*  The bankruptcy court's choice between dismissal and conversion is reviewed for abuse of discretion.  *See, e.g.*, *In re Mechanical Maintenance, Inc.*, 128 B.R. 382, 386 (E.D. Pa. 1991) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 117, and collecting cases); *In re Hampton Hotel Investors, LP*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001) ("Courts agree that

5

ultimately, the determination of whether to dismiss a chapter 11 case, on the one hand, or to convert it, on the other, is a matter for sound judicial discretion."). While one court has reviewed a decision to convert under a "clear error" standard, *see Loop Corp. v. U.S. Trustee*, 290 B.R. 108, 112 (D. Minn. 2003), I choose to follow the majority of courts in reviewing for abuse of discretion. A court abuses its discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (footnotes and internal quotation marks omitted).

### III.     Discussion

Management's opening and reply briefs read more like a screed than a legal argument. Neither identifies the proper standard of review or cites a single court decision, and both bristle with accusations of impropriety about events that occurred either long before or months after the bankruptcy court's decision. These are not proper appeal briefs, and it is not this Court's responsibility to spot legal arguments in this fog of rhetoric. *See In Re Potter*, 354 Fed. App'x 387, 389 (10th Cir. Dec. 4, 2009) ("In the midst of these accusations, Mr. Friedlander's appellate arguments are not at all apparent. Nor are there citations to supporting legal authorities that would enable us to discern his appellate arguments. We cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." (internal quotation marks and citation omitted)); *see also Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citations omitted)).

Nonetheless, this Court has reviewed the briefs, and from what it can discern, Management is making three points: (1) the bankruptcy court, given the evidence before it, should have dismissed rather than converted, (2) the bankruptcy court misled Management by initially making statements suggesting that it would dismiss the case, and those statements prevented the bankruptcy court from deciding later to convert rather than dismiss, and (3) the bankruptcy court's intent in converting the case was to destroy Management's appellate rights. None of these assertions is supported by citations to the record or the law, and none persuades me that the bankruptcy court abused its discretion.

> *A. The Decision to Convert Rather than Dismiss*

11 U.S.C. § 1112(b) empowers a bankruptcy court to dismiss a chapter 11 case or convert it to a chapter 7 case. Under the statute, the bankruptcy court must conclude that "cause" exists before converting or dismissing a chapter 11 case. On appeal, Management does not challenge the bankruptcy court's decision that cause existed to dismiss or convert. Rather, it challenges the bankruptcy court's choice of conversion over dismissal.

Once a bankruptcy court finds cause under Section 1112(b), it must determine whether dismissal or conversion to chapter 7 is in "the best interests of creditors and the estate." When a party moves for one of conversion or dismissal rather than the other, the movant bears the burden to show that its preferred action is in the best interests of the creditors and the estate. *See* 7Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 1112.04[4] (16th ed.) ("[T]he movant bears the initial burden of demonstrating that cause exists . . . . Likewise if the moving party seeks dismissal rather than conversion, or conversion rather than dismissal, the moving party should demonstrate why the requested alternative is in the best interests of creditors and the estate."). A chapter 11 debtor's preference for dismissal is not dispositive: "While [a] debtor

7

may voluntarily choose to place [itself] in bankruptcy, [it] does not enjoy the same discretion to withdraw [its] case once it has been commenced.  If dismissal will prejudice parties, a court may refuse to allow debtor to dismiss [the] petition." *In re Sanders*, 417 B.R. 596, 602 (D. Ariz. 2009) (citations and internal quotation marks omitted).

"The Code does not define the phrase 'best interests of creditors and the estate.'"  7 Collier on Bankruptcy ¶ 1112.04[7].  As a result, courts have indicated various reasons for choosing conversion and rejecting dismissal.  Courts have considered "prejudice to creditors" to be a proper reason for a bankruptcy court's refusal to dismiss a chapter 11 case.  *See id.*; *Matter of Atlas Supply Corp.*, 857 F.2d 1061, 1063 (5th Cir. 1988) ("If dismissal would prejudice the creditors, then it will ordinarily be denied.").  Misconduct of the debtor, i.e., debtor actions that delay creditors' ability to collect their claims or otherwise protect their interests, also warrants conversion rather than dismissal.  *See In re Simmons*, 200 F.3d 738, 743 (11th Cir. 2000) ("When dismissal will only allow the Debtor to hinder creditors, secret[e] assets, and further the Debtor's abuse of the system, dismissal or her voluntary petition is not warranted."); *In re Picacho Hills Utility Co., Inc.*, 518 B.R. 75, 80 (Bankr. N.M. 2014) (finding the need for a "neutral, unbiased trustee" to investigate transfers favored conversion rather than dismissal); *In re FL. Invest. USA, Inc.*, No. 13-10814, 2013 WL 4039807, at *5 (Bankr. E.D. Cal. Aug. 7, 2013); *see also* 7 Collier on Bankruptcy ¶ 1112.04[7] ("In [choosing between conversion and dismissal], the court may consider such factors as . . . whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.").  Collier also lists "whether the debtor would simply file a further case upon dismissal" as a reason to convert rather than dismiss. 7 Collier on Bankruptcy ¶ 1112.04[7].

The considerations listed above formed the basis of the bankruptcy court's decision to convert rather than dismiss. In its non-exhaustive list of reasons favoring conversion, the bankruptcy court noted that Management had failed to take steps to reorganize, had made avoidable transfers, and had attempted to employ counsel with actual or potential conflicts of interest. Further, the list of reasons given by the bankruptcy court was not exhaustive, Dist. Doc. 1-1 at ¶ 10, and the record suggests that Management was already showing signs of "abus[ing] . . . the system," *In re Simmons*, 200 F.3d at 743, by initially making a filing in New Jersey found to have been in bad faith and two months later filing in Delaware, although its principal asset was identified as a claim in a pending Connecticut bankruptcy case. These behaviors by Management prejudiced creditors by frustrating their ability to collect on their claims. Dismissal would have further frustrated these efforts – possibly permitting Management to file for bankruptcy in yet another jurisdiction and forcing its creditors to respond, again. Considering these factors, and Management's failure to cite any portions of the record or any case law to challenge the decision, this Court finds that the bankruptcy court did not abuse its discretion by choosing conversion over dismissal. There was a legal basis to do so, the factual reasons the court set out in its decision were not clearly erroneous, and, given these facts, the decision was "permissible."

> B. The Bankruptcy Court's Statements Regarding Dismissal and Management's Lack of Assets

Management argues that the bankruptcy court committed reversible error by indicating to Management during the October 7 hearing that it would grant a motion to dismiss. It asserts that the bankruptcy court improperly "switched it up" on Management by making inconsistent statements during the October 7 and October 28 hearings. Appellant's Br. 16. At some point during the October 7 hearing, Management claims, the bankruptcy court told the First

9

Connecticut trustee "straight out that it would dismiss it." *Id.* at 10.  Management fails to cite or quote any such statement from the October 7 hearing transcript.  After a full review of the hearing transcript, the Court finds only a single mention of a motion to dismiss, which is reproduced in the "Background" section of this opinion.  The bankruptcy court's only statement mentioning a motion to dismiss during the October 7 hearing was that it would entertain a motion to dismiss during the continued conversion hearing if any party chose to make one – which is, of course, not an indication that it would *grant* one.  October 7 Transcript, at 44.  Even if the bankruptcy court had made a statement suggesting that it was inclined to grant a motion to dismiss, Management fails to cite any statute, rule, or case that suggests a court's stated "inclinations" during a motion hearing will have binding effect on that court's ultimate ruling.  Although Management makes a vague reference to the "law of the case" doctrine, that doctrine applies only to earlier *rulings* of a court – not musings or inclinations mentioned during a hearing – and, in any event, that doctrine is discretionary.  *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) ("Application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.") (internal quotation marks and citations omitted); *see also* 18B Charles A. Wright, et al., Fed. Prac. & Proc. Juris. § 4478 (2d ed.) ("Actual decision of an issue is required to establish the law of the case.  Law of the case does not reach a matter that was not decided.").  Management points to no earlier ruling by the bankruptcy court to support its attempt to invoke the law of case doctrine.

At times, Management also seems to argue that the July 1, 2014 Order in the First Connecticut Bankruptcy somehow prevented the bankruptcy court from deciding to convert Management's bankruptcy case to chapter 7.  According to this argument, the bankruptcy court was required to grant the motion to dismiss because its July 1, 2014 Order found that

10

Management held no interest in the assets at issue in the First Connecticut Bankruptcy. Lack of estate assets can be a proper cause under Section 1112(b) for a bankruptcy court to dismiss a chapter 11 bankruptcy case. *See, e.g.*, *In re Allison Assocs.*, 63 B.R. 756, 766 (S.D.N.Y. 1983) ("[S]ince Ellison had no assets save its contested claim to the Property, its petition for bankruptcy was properly dismissed under 11 U.S.C. § 1112(b)(1) & (2)."). But the bankruptcy court cited the fact that Management had made inconsistent representations about its assets in other fora.[5] In any event, Management cites no authority for the proposition – nor does it even argue clearly – that the bankruptcy court *must* dismiss, rather than convert, a chapter 11 case if the estate's assets are determined to belong to another. Without any indication that the bankruptcy court misapplied the law, that it determined facts in a clearly erroneous manner, or that the decision was outside "the range of permissible decisions," this Court cannot rule that the bankruptcy court abused its discretion in its decision to convert in light of its ruling in the First Connecticut Bankruptcy.

  *C. Management's Other Allegations of Impropriety*

Management's alternative argument in challenging the bankruptcy court's order is its allegation that the bankruptcy court granted conversion only for the "improper purpose of destroying" Management's appellate rights in the First Connecticut Bankruptcy. Appellant's Br. 18. As noted, at the time of the October hearings, Management's appeal of the July 1, 2014 Order was pending before this Court. On March 24, 2015, long after the bankruptcy court's order converting Management's case, the appointed chapter 7 trustee filed a stipulation of dismissal of Management's appeal, which was dismissed on March 30, 2015. Dist. Dkt. No. 14-

---

[5] Furthermore, Management's own statements during the bankruptcy court hearing contradict its argument on appeal. During the October 7 hearing, when the bankruptcy court asked Management's counsel whether she believed Management held any assets, counsel stated that despite the bankruptcy court's July 1, 2014 Order, Management does hold assets. *See* October 28 Transcript, 15–19.

11

cv-1202 (D. Conn.), Doc. 42.  Citing this history – all of which postdates *this* appeal – Management argues that the actual, but unexpressed, reason the bankruptcy court granted conversion and denied dismissal in October 2014, was to enable it to appoint a trustee who could take over the First Connecticut Bankruptcy appeal, dismiss the case, and prevent Management from ever again asserting rights to the assets at issue.

The bulk of Management's attack would not normally be cognizable in this appeal because it relies on events occurring after the bankruptcy court entered the order being reviewed on appeal.  "Normally, the court of appeals will consider only the record and facts considered in the [lower court]." *Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139, 150 (1973).  In "extraordinary circumstances," however, an appellate court may "take judicial notice of developments in [a] case on appeal which have occurred in the [lower court] after the appeal was filed." *In re Cummins*, 20 B.R. 652, 653 (9th Cir. BAP 1982).  While this case in no way presents "extraordinary circumstances," I err on the side of considering Management's claims of impropriety, and conclude that they lack merit.

Management argues that the bankruptcy court's colloquy with the Trustee during a March 24, 2015 hearing, *see* Bankr. Doc. 170 ("March 24 Transcript"), proves Judge Shiff's intent to "destroy" Management's appeal in the First Connecticut bankruptcy.  Management claims that Judge Shiff "openly threatened" the Trustee during the hearing that if she continued to pursue the *First Connecticut* appeal, "she would be violating her duty as an attorney." Appellant's Br. 12.  Management's argument is based on the following colloquy between Judge Shiff and the Trustee, Ms. Rescia, which refers to James Licata, an individual involved in the First Connecticut Bankruptcy and other bankruptcies before Judge Shiff:

**The Court**:   Mr. Licata is involved in any number of cases; he and/or his wife. He continues to be involved, notwithstanding any orders that say

|   |   |
|---|---|
| | he isn't involved, that he has nothing to get involved with, that doesn't dissuade him. |
| | He files bankruptcy petition after bankruptcy petition after bankruptcy petition. He files them in other districts, New Jersey, Delaware, they all end up back here. |
| | And you've got this duty as an attorney, to research these matters, look at them, and any participation you make and anything you say or do or write, goes through the filter that I have read the file, I understand the file, I know the facts, and there is law that supports what I am doing. And you just told me you did that. |
| **Ms. Rescia**: | And that I understand that Mr. Licata is connected to Reclaimed and that's set forth in my motion and mentioned by the Licata trustees. |
| | However, after my investigation it's still unclear to me in this case what the debtor [i,e, Management] owns, if anything. |
| **The Court**: | Well, it should not be unclear to you. There are court orders that have not been appealed, that has stated very clearly, as clearly as words could accomplish the task. So why is it unclear to you? |
| **Ms. Rescia**: | Well, if there's any value to any assets of the estate that I have been offered to bring money into the estate. |
| **The Court**: | Of course you have. That's what they do. They offer money, then they don't pay it. |
| **Ms. Rescia**: | Well, these funds have been paid. I am holding the 50,000. |
| **The Court**: | But what you're conflating, I believe, and -- is you want to bring money into an estate that you're the trustee for, and somebody is handing you a bag of money. And you're saying, why should I refuse this money? I'm going to take this money and I'm going to distribute it, and then I'm going to take a commission because I made a distribution and everybody goes home happy. |
| | But you're trying to bring the Court into this, and that's where my concern is because this Court has already ruled on what property there is. |
| | You may sit down, sir. |
| | I've already ruled it, on this question. |

13

**Ms. Rescia**: I understand.

**The Court**: I've ruled three times on this question. They're all written. One of them was not appealed. Two of them are on appeal.

And what you're doing is taking -- giving Mr. Licata and friends an opportunity to muscle their way into the appeal process on one of those, or both of those conclusions by this Court that there are no assets that belong to SWJ Management.

Now, is that not a correct statement of what's happening here?

**Ms. Rescia**: Yes, Your Honor.

**The Court**: All right.

**Ms. Rescia**: So regardless of whether there's any assets of the estate I do have a party coming forward to purchase whatever --

**The Court**: Purchase nothing.

**Ms. Rescia**: Exactly, Your Honor. Purchase nothing, as has been told. And I, you know, certainly tried -- have discussed with the Licata trustees at length to see any other way to resolve the issues in the case. I did speak to Mr. Mocco's attorney to see if he had any interest in it.

If I could go back to, I listened to the October 28th, 2014 hearings prior to my appointment, which was the Court's hearings on the motion to dismiss this case by the debtor, and the motion to convert the case by the Licata trustees.

And at that hearing Attorney Miltenberger, on behalf of Trustee Coan, supported conversion to have an independent trustee to investigate to see what could be recovered for the benefit of creditors.

And Trustee Chorches stated that he believed that the conversion could net meaningful distribution to creditors. And the recoveries that were mentioned at that time related to fraudulent transfers by Richard Annuziata.

**The Court**: Sure. Sure.

**Ms. Rescia**: And, which funds that went through the prior debtor-in-possession account of the debtor, which were small amounts that the debtor does -- debtor. Excuse me, Mr. Annuziata does appear to have used as his own personal checking account. And those amounts total approximately $10,000.

I've been given an informal notice from Attorney Miltenberger that Mr. Annuziata has recently filed a bankruptcy proceeding himself in New Jersey.

And although I don't know the status of that, it does appear that collecting this $10,000 from Mr. Annuziata would be difficult, even if his case was dismissed based on other information, and that the other reason that the case was converted was that there was a question about unauthorized fees, attorney's fees to Attorney Carlebach and some others.

And based on my investigation it does appear that the debtor did not pay those fees so that there would be no point in recovering those fees because it would not benefit the estate. And the total amount of those fees together is approximately $50,000. The same amount that I am asking this Court to bring into the bankruptcy estate.

As to the Licata trustee's objection, mentioned that it's not going to benefit creditors. That if I bring this money in that the estates will continue to spend funds in litigation. And this may or may not be true.

I do understand enough of the history. I won't contend to say that I -- since I haven't been involved in the other cases until recently, that the Licata estates have compromised their rights with Mr. Mocco, the appeal that is before Judge Shea, which is also -- I have put in here to assign any rights of this estate in that appeal to Reclaimed, is before Judge Shea and --

**The Court**: So you are the appellant then the in that. Is that right?

**Ms. Rescia**: Well, technically I am the appellant.

**The Court**: Well, not technically. Actually you are.

**Ms. Rescia**: Yes.

**The Court**: So your efforts before District Judge Shea are, reverse the bankruptcy court so that I am out of business and this case is not a

15

|                  |                                                                                                                                                                                                                          |
|------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                  | 7 any longer, and I won't be the trustee any longer, and it will be a Chapter 11. That's your effort up in the District Court?                                                                                           |
| **Ms. Rescia**:  | Well, that's the position I have been put in, Your Honor.                                                                                                                                                                |
| **The Court**:   | All right. Well, no, because you're not obligated to continue that appeal. You can drop the appeal. You wouldn't have brought this appeal to put yourself out of business, I don't assume.                               |
| **Ms. Rescia**:  | Well, Your Honor, I didn't bring the appeal. The appeal was pending at the time of the conversion.                                                                                                                       |
| **The Court**:   | I understand that. And I'm saying, had it not been this isn't something you would be bringing.                                                                                                                           |
| **Ms. Rescia**:  | That's correct, Your Honor.                                                                                                                                                                                              |
| **The Court**:   | So you inherited it.                                                                                                                                                                                                     |
| **Ms. Rescia**:  | Correct.                                                                                                                                                                                                                 |
| **The Court**:   | And you're not obligated to prosecute it.                                                                                                                                                                                |
| **Ms. Rescia**:  | That's correct, Your Honor.                                                                                                                                                                                              |
| **The Court**:   | But if you do prosecute it and you succeed, what you'd succeed in doing is putting yourself out of business and taking this out of Chapter 7.                                                                            |
| **Ms. Rescia**:  | No, Your Honor, that appeal is the appeal of the conversion in the First Connecticut case.                                                                                                                               |
| **The Court**:   | Oh, okay. I stand corrected. That's First Connecticut. But is there an appeal in the Licata case?                                                                                                                        |
| **Mr. Miltenberger**: | Your Honor, there's two appeals. One is an appeal of Your Honor's denial of SWJ motions -- SWJ Management's motion to convert the First Connecticut case. I think that's the appeal to which Trustee Rescia was referring. |
|                  | There's a second appeal which is SWJ Management's appeal of the conversion of its Chapter 11 case to a Chapter 7 case. SWJ Management has not filed a brief in that matter and we've made a motion to dismiss, which is currently pending in front of Judge Shea. It has not been responded to. |

16

> **Ms. Rescia**: And, Your Honor, in that appeal I am the actual appellee, because as the Court knows --
>
> **The Court**: Let's get back to really -- and I apologize for diverting you from this track.

March 24 Transcript, at 6–13.  While Judge Shiff's characterization of the long and complicated First Connecticut Bankruptcy history – and his decade-long involvement in it – could be described as colorful, the transcript does not support the accusation that he was threatening the Trustee.  In short, the March 24, 2015 Transcript supplies no reason to question the propriety of the bankruptcy court's October 29, 2014 decision to convert this case.

To the extent Management is suggesting that Judge Shiff was somehow biased against it when he issued the order denying dismissal and converting the case to chapter 7, Management is, again, long on rhetoric and short on support.  The fact that a judge has ruled against a litigant – even multiple times in a row – is not an indication of bias or grounds for recusal.  *See, e.g.*, *United States v. Schwartz*, 535 F.2d 160, 165 (2d Cir. 1976) ("Adverse rulings, standing alone, do not establish judicial bias or prejudice, nor create a reasonable question of judicial impartiality." (citations and internal quotation marks omitted)); *In re Int'l Bus. Machines Corp.*, 618 F.2d 923, 929 (2d Cir. 1980) ("Judicial independence cannot be subservient to a statistical study of the calls [a judge] has made during the contest.").  Further, Management did not move to recuse Judge Shiff.

In short, this Court finds no basis in the record to suggest that Judge Shiff was biased or to question the validity of his order converting this bankruptcy case to chapter 7.[6]

---

[6] Management also claims the United States Trustee made a misrepresentation by failing to inform the bankruptcy court of its then-pending motion to dismiss during the October 7 hearing.  Appellant's Opening Br. 17; *see* Bankr. Doc. 29.  Sitting as an appellate body, this Court is not the proper venue in which to make such a claim.  Even if the alleged actions amounted to misrepresentation under 18 U.S.C. § 157 – an assertion upon which I express no opinion – Management fails to show how this misrepresentation would have affected the bankruptcy court's decision to convert rather than dismiss.  The bankruptcy court heard argument on Management's motion to dismiss during the October 28 hearing.  At that hearing, the United States Trustee argued in favor of conversion rather than

## IV.     Conclusion

For the reasons stated above, the bankruptcy court's decision granting the First Connecticut Bankruptcy Trustee's motion to convert and denying Management's motion to dismiss was not an abuse of discretion. The bankruptcy court's decision is therefore AFFIRMED. As a result of this ruling, Appellee's Motion to Dismiss the Appeal (Dist. Doc. 12) is DENIED as moot. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut

September 16, 2015

---

dismissal. *See* October 28 Transcript, at 14–15. There is no evidence that any failure by the United States Trustee to notify the bankruptcy court of its pending motion to dismiss during the October 7 hearing had an appreciable effect on the bankruptcy court's decision to convert rather than dismiss.